**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EBERARDO VALDEZ, also known as
Eberardo Lalo Valdez,

Petitioner-Appellant,

v.

ERASMO BRAVO, Warden,
Guadalupe County Correctional
Facility; and ATTORNEY GENERAL
FOR THE STATE OF NEW MEXICO,

Respondents-Appellees.

No. 05-2366

(D. New Mexico)

(D.C. No. CIV-01-334 MV/RLP)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **MURPHY**, Circuit Judge, and
**LUNGSTRUM**,[**] District Judge.

**I. Introduction**

Eberardo Valdez was convicted by a jury of second-degree murder in New

Mexico state court. In addition to the jury instruction on second-degree murder,

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]The Honorable John W. Lungstrum, Chief Judge, United States District
Court for the District of Kansas, sitting by designation.

which was proper, the trial court erroneously instructed the jury on a theory of felony murder that was invalid under state law. Following an unsuccessful direct appeal and motion for postconviction relief in the state court system, Valdez filed a petition for habeas relief in the United States District Court for the District of New Mexico, pursuant to 28 U.S.C. § 2254. In his petition, he argued, *inter alia*, that the instruction on felony murder was improper and resulted in a compromise verdict of guilty on the crime of second-degree murder. The district court recognized the error, but found the error harmless and dismissed the petition. This court granted a certificate of appealability as to Valdez's argument that, in light of *Price v. Georgia*, 398 U.S. 323, 331 (1970), the district court erred in finding the improper felony murder instruction harmless. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, this court **affirms**.

## II. Background

The facts underlying Valdez's state conviction and the case's procedural history are set forth in detail in this court's published opinion issued in Valdez's prior appeal. *See Valdez v. Bravo*, 373 F.3d 1093, 1094-95 (10th Cir. 2004). Therefore, only a brief summary will be reproduced here. The evidence in this case established that Valdez and four other men drove to the mobile home of Kendrick Rudolph and Carl Smith for the purpose of fighting the two men. *Id.* at 1094. When they arrived, the men entered the home and initially began attacking Smith. *Id.* Four of the men then turned their attention to Rudolph while Valdez

-2-

chased Smith out the back door and into the yard on the side of the home. *Id.* As

Valdez fought Smith, the other four men continued to beat Rudolph and stab him

repeatedly, ultimately stabbing him fifty-four times and hitting him over the head

with a VCR. *Id.* at 1094-95. Valdez then heard police sirens approaching and

came back into the home to warn the other four men. *Id.* at 1094. All five men

fled the scene of the attack. *Id.* Police and paramedics arrived at the scene a

short time later and Rudolph was pronounced dead. *Id.* at 1095.

Valdez was charged with an open count of murder in New Mexico state

district court. The trial court instructed the jury on four theories of conviction:

felony murder, second-degree murder, voluntary manslaughter, and involuntary

manslaughter. The instruction on felony murder used the crime of aggravated

battery with a deadly weapon as the underlying felony. There is no dispute that

such an instruction was contrary to New Mexico law, under which aggravated

battery may not serve as the predicate offense for a felony murder charge. *See*

*State v. Campos*, 921 P.2d 1266, 1274 (N.M. 1996). The jury convicted Valdez of

second-degree murder as an accessory and Valdez was sentenced to fifteen years

in prison.

Valdez argued on direct appeal that there was insufficient evidence to

support his conviction and that the instruction on felony murder constituted

reversible error. The New Mexico Court of Appeals affirmed the conviction. It

concluded there was sufficient evidence to support Valdez's conviction and that

Valdez was not prejudiced by the erroneous felony murder instruction. In so holding, the New Mexico Court of Appeals placed the burden of showing prejudice on Valdez, stating Valdez "failed to show that he was prejudiced" by the improper instruction. The New Mexico Supreme Court denied certiorari and Valdez was denied postconviction relief in the state court system.

Following denial of state habeas relief, Valdez filed a petition for federal habeas relief pursuant to 28 U.S.C. § 2254. In his habeas petition, Valdez again raised arguments regarding the sufficiency of the evidence and the improper felony murder instruction. The district court granted habeas relief on the sufficiency of the evidence claim and entered an order barring the state from retrying Valdez. The district court expressly declined to consider whether habeas relief was warranted as a result of the improper felony murder instruction as well. On appeal, this court reversed the district court order granting habeas relief, concluding "sufficient evidence existed to support Valdez's conviction as an accessory to second-degree murder . . . ." *Valdez*, 373 F.3d at 1100. On remand, the district court considered and rejected Valdez's claim based on the improper jury instruction, concluding the error was harmless. The district court therefore denied the habeas petition and dismissed the case with prejudice.

## III. Analysis

In an appeal of the denial of habeas relief, this court reviews the district court's legal conclusions *de novo*, applying the same standard of review to the state court decision as that used by the district court. *Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004). Where a claim has been adjudicated on the merits in state court, a federal court may not grant habeas relief on that claim unless the adjudication of that claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). If the state court decision is contrary to clearly established federal law, it is entitled to no deference and this court determines *de novo* whether an error has occurred that warrants habeas relief. *See Brown v. Uphoff*, 381 F.3d 1219, 1225 (10th Cir. 2004); *Spears v. Mullin*, 343 F.3d 1215, 1248 (10th Cir. 2003). Habeas relief will not be granted for non-structural constitutional error unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted).

The jury instruction on felony murder, based on the predicate felony of aggravated battery with a deadly weapon, was indisputably erroneous under state law. *See Campos*, 921 P.2d at 1274. The New Mexico Court of Appeals agreed

with Valdez on this point and the government does not contend otherwise.

Valdez, however, argues the result reached by the New Mexico Court of Appeals was contrary to clearly established federal law because the court failed to apply the harmless error standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967), under which "the beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Again, the government does not dispute Valdez's contention that by placing the burden of demonstrating prejudice on Valdez, the New Mexico Court of Appeals applied a harmless error analysis that was contrary to the clearly established *Chapman* standard. This court will accept the parties' agreement on this issue and assume the failure to apply the *Chapman* rule resulted in a decision that was contrary to clearly established federal law.[1] *See Turrentine*, 390 F.3d at 1190. Thus, this court must proceed to consider *de novo* whether the improper

---

[1]The New Mexico Court of Appeals framed the issue on direct appeal as whether "the State's felony murder theory was contrary to New Mexico law" and based its conclusion as to error solely on a rule of state law established by the New Mexico Supreme Court. Because the *Chapman* harmless error standard applies only to federal constitutional error, it is not clear that the New Mexico Court of Appeals was obligated to apply the federal standard in this case. *See Chapman v. California*, 386 U.S. 18, 21 (1967) ("The application of a state harmless-error rule is, of course, a state question where it involves only errors of state procedure or state law."). Thus, while this court will operate within the framework presented by the parties, which is the same framework applied by this court in *Turrentine v. Mullin*, 390 F.3d 1181, 1189-91 (10th Cir. 2004), we nevertheless do not suggest the harmless error decision by the New Mexico Court of Appeals was contrary to federal law.

-6-

instruction on felony murder is of the class of errors that warrants federal habeas relief. *See Brown*, 381 F.3d at 1225.

"A § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997). "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Rather, where a habeas claim is based on an improper jury instruction, the initial inquiry must be "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (quotation omitted); *see also Nguyen*, 131 F.3d at 1357 ("As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." (quotation omitted)). In making this determination, this court must consider the jury instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72. Further, even where the erroneous instruction rises to the level of constitutional error, this court must conduct its own harmless error analysis under *Brecht. See Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007) (holding *Brecht* harmless error standard applies to constitutional error in § 2254 proceedings, "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*").

Therefore, Valdez is entitled to habeas relief only if the improper felony murder instruction both (1) "so infected the entire trial that the resulting conviction violates due process" and (2) "had a substantial and injurious effect or influence in determining the jury's verdict." *Turrentine*, 390 F.3d at 1191 (quotation omitted). Although the two standards overlap and the harmlessness of the error bears on the constitutional question, *see Hale v. Gibson*, 227 F.3d 1298, 1324 (10th Cir. 2000), habeas relief cannot be granted unless the petitioner first establishes a constitutional violation.

While "[i]t should not be necessary for this court to point out the seriousness of accurate jury instructions," *Turrentine*, 390 F.3d at 1194, a review of the record and instructions as a whole indicates the error in this case did not result in a conviction that violates due process. After instructing the jury on each of the four theories of conviction, the state court instructed the jury to begin by deliberating felony murder and proceed to second-degree murder only if it was unable to reach a guilty verdict on felony murder. By returning a guilty verdict on second-degree murder, the jury necessarily did not find Valdez guilty of felony murder under the erroneous theory with which it was presented. *Cf. United States v. Cooper*, 812 F.2d 1283, 1287 (10th Cir. 1987) (Baldock, J., concurring) ("Conviction on a lesser included offense operates as an implied acquittal on the greater offense."). Of course, as Valdez points out, a conviction for felony murder under these circumstances would undoubtedly raise due process concerns.

In this case, however, Valdez was implicitly acquitted of the erroneous charge of felony murder and convicted of a proper charge for which there was no instructional error. Unlike an instruction on an offense barred by double jeopardy, for which the constitutional violation is the "risk or hazard of trial and conviction, not the ultimate legal consequences of the verdict," *Price v. Georgia*, 398 U.S. 323, 331 (1970), an instruction on a theory that is erroneous under state law does not necessarily violate due process when the defendant is not convicted under that theory.

Valdez nevertheless argues he is entitled to habeas relief because the erroneous felony murder instruction may have caused the jury to compromise its verdict, finding him guilty of second-degree murder rather than continuing to debate his innocence. *See id.* at 331. He asserts the submission of a greater charge to the jury increases the likelihood of conviction on a lesser charge because jurors will presume a defendant charged so severely must be guilty of a serious crime. Because the felony murder theory could not form the basis for a valid conviction under state law, Valdez argues its inclusion in the jury instructions was "profoundly prejudicial" and "unfairly tainted" the jury, such that the resulting conviction violated his constitutional rights.

We decline to adopt such an approach because it would require this court to ignore the principle that jurors are presumed to follow the instructions given. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The state trial court instructed the

jury to consider each charge separately and to decide the case only by applying the law as stated in the instructions to the facts. Contrary to Valdez's assertions, nothing more than speculation supports his suggestion that the jury ignored these instructions and instead reached a verdict on the basis of compromise or prejudice. *See United States v. Nelson*, 54 F.3d 1540, 1547 (10th Cir. 1995) ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (quotation omitted)). While Valdez argues the similarities between the instructions on felony murder and second-degree murder precluded a rational jury from acquitting him of felony murder and returning a guilty verdict on second-degree murder, this court's review of the jury instructions indicates otherwise. The instruction on felony murder required the jury to find Valdez intended the crime of aggravated battery with a deadly weapon to be committed, while the second-degree murder instruction required no such finding.[2] If the jury

_____

[2]The jury instruction on felony murder required the state to prove seven elements: (1) the felony crime of Aggravated Battery With a Deadly Weapon was committed; (2) Valdez helped, encouraged, or caused the felony of Aggravated Battery With a Deadly Weapon to be committed; (3) Valdez intended that Aggravated Battery With a Deadly Weapon be committed; (4) Rudolph was killed during the commission of the felony; (5) Valdez helped, encouraged, or caused the killing to be committed; (6) Valdez intended the killing to occur or knew that he was helping to create a strong probability of death or great bodily harm; and (7) this happened in New Mexico on or about the 16th day of January, 1998.

The jury instruction on second degree murder required the state to prove four elements: (1) Valdez killed Rudolph; (2) Valdez knew that his acts created a

(continued...)

found this element to be lacking, its guilty verdict for second-degree murder would have been entirely consistent with its acquittal on the felony murder charge.

Moreover, the jury's conviction on second-degree murder was consistent with the evidence presented. *See Valdez*, 373 F.3d at 1098-1100. There was evidence Valdez drove to the mobile home with the intention of fighting, prevented Smith from assisting Rudolph during the attack, and reentered the home to warn the other men the police were arriving. *Id*. at 1098. Valdez testified on cross-examination that he saw Rudolph covered in blood but nevertheless chose to flee the scene instead of rendering aid. This evidence directly suggests that Valdez, at a minimum, was aware of the deadly attack and did nothing to intervene. Although the sufficiency of the evidence does not alone eliminate the possibility of a due process violation, the strength of the evidence supports the conclusion that the actual verdict entered in this case was not the result of an unconstitutional jury compromise. *Cf. Turrentine*, 390 F.3d at 1191 (discussing the strength of the evidence as support for the conclusion that the erroneous jury

_____

[2](...continued)
strong probability of death or great bodily harm to Rudolph; (3) Valdez did not act as a result of sufficient provocation; and (4) this happened in New Mexico on or about the 16th day of January, 1998. The jury was further instructed that Valdez could be found guilty of second degree murder "even though he himself did not do the acts constituting the crimes," if the state proved the following: (1) Valdez intended that the crime of second degree murder be committed; (2) the crime of second-degree murder was committed; and (3) Valdez helped, encouraged, or caused the crime to be committed.

instruction did not violate due process). If the jury had harbored any doubt about Valdez's guilt on the second-degree murder charge, it retained the option of convicting on the lesser crime of voluntary or involuntary manslaughter.

Where, as here, a constitutional claim is not based on a specific guarantee enumerated in the Bill of Rights, "the Due Process Clause has limited operation" and "the category of infractions that violate 'fundamental fairness' [are defined] very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). In the context of this case, Valdez has given this court no specific reason, aside from broad generalizations, to depart from the well-established presumption that jurors follow the instructions given. *See Weeks*, 528 U.S. at 234. Nor is there anything inherently prejudicial about the felony murder instruction itself, when compared to the properly given second-degree murder instruction. There is no indication the inclusion of this instruction affected the trial proceedings or permitted the admission of evidence that would not otherwise have been admitted. In light of the entire record and the instructions as a whole, this court cannot conclude the improper instruction on felony murder so infected the trial as to constitute a federal due process violation justifying habeas relief.

The Supreme Court's decision in *Price* does not compel a different result. In *Price*, the petitioner was tried for murder and found guilty of the lesser included offense of voluntary manslaughter. 398 U.S. at 324. The Supreme Court concluded the murder charge violated double jeopardy and then concluded

the conviction for voluntary manslaughter did not render the error harmless because "we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." *Id.* at 331. Unlike this case, however, *Price* involved the established violation of a strict constitutional mandate, the Double Jeopardy Clause of the Fifth Amendment. In contrast, Valdez's claim rests on the more general principles of due process and fundamental fairness. *Cf. Mahorney v. Wallman*, 917 F.2d 469, 472-73 (10th Cir. 1990) (distinguishing, in the context of prosecutorial misconduct, claims based on the deprivation of a specific constitutional right from claims based on generalized due process concerns). Indeed, as discussed above, Valdez has failed to show a constitutional violation at all. *Price* did not hold that the erroneous submission of a greater charge is inherently unconstitutional, but only that the constitutional error in that case was not rendered harmless by a conviction on the lesser charge. 398 U.S. at 331. Because the instruction on felony murder in this case did not rise to the level of constitutional error, as the instruction in *Price* did, this court need not reach the issue of harmlessness and the harmless error analysis of *Price* is inapplicable.

## IV. Conclusion

For the foregoing reasons, this court **affirms** the district court order denying and dismissing Valdez's petition for habeas relief.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge